Opinion issued September 23, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00304-CR

———————————

Ernest Lee JOINer, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 56th District Court

Galveston County, Texas



Trial Court Case No. 08CR0013

 



 

MEMORANDUM OPINION

A jury found appellant, Ernest Lee
Joiner, guilty of aggravated assault with a deadly weapon[1] and assessed his punishment
at ten years’ confinement.  In one issue,
appellant contends that the State failed to present factually sufficient
evidence to support the jury verdict.

          We
affirm.

Background

Appellant was charged with aggravated assault arising out of
an incident that occurred at a gas station convenience store in the early morning
hours of November 22, 2007.

At trial, the complainant, Marcus Wilson, testified that he and
his younger brother left HTs, a club in Texas City, and went to a gas station
with a built-in convenience store.  The complainant
admitted that he had previously been convicted of felony drug possession.  He also testified that he used marijuana about
eight hours before showing up at the gas station at 3 a.m.[2]
 When the complainant arrived, several
other people including appellant, who was also known as Whoopie or E, were in
the proximity of the convenience service window of the gas station.

The complainant testified that he and appellant were engaged
in an ongoing feud that began when appellant and his friends allegedly assaulted
the complainant at a club in September 2007. 
Moments before the incident underlying the present case, appellant and
the complainant attempted to settle their “problems” and shook hands at the gas
station.  However, as the complainant
stood at the convenience service window and requested five dollars worth of gas
and a carton of orange juice from the clerk, another person in the group revived
the feud.  Appellant then threatened the complainant,
“No. It ain’t no problem because I have five rounds,” implying that he had five
bullets for the complainant.  The complainant
testified that he said, “You was just talking about settling it.  Now you talking about you have five rounds.  And I told him F him and his five rounds.”  At this point, the clerk knocked on the service
window to give the complainant his purchases. 
The complainant turned around to face the window and “was getting [his]
stuff and that’s when [appellant] shot [the complainant].”  After the first shot, the complainant spun
around to face the shooter, and he saw appellant running away while firing two
more shots.  The complainant sought
shelter around the side of the gas station.

The convenience store clerk also testified at trial.  Neither the complainant nor the clerk saw who
fired the first shot, but both of them observed that the fleeing man had a
firearm and shot at the complainant twice while running.  Both of these subsequent shots missed the complainant,
but one of the bullets knocked a large chunk of concrete off of the wall.  The clerk called 9-1-1 after the second shot.

Officer A. Bjerke arrived at the scene of the shooting and
located the metal jacket of a fired bullet near the convenience service window
during the physical investigation.  The
recovered metal jacket was not submitted for fingerprint analysis or other
forensic investigation.  No weapon was
ever recovered.  The clerk also gave a
statement to police in which he indicated that the shooter “was wearing a red
baseball hat” and “a red and white jacket or sweater.”

The complainant did not call 9-1-1 immediately, but attempted
to drive to the local hospital with his brother; however, their vehicle broke
down on the way. Eventually, the complainant called 9-1-1, using his cell
phone.  The complainant testified that,
at the time of his 9-1-1 call, he “fear[ed] for [his] life” and he was “afraid
of dying,” and that only he spoke to the dispatcher, not his brother.  During the 9-1-1 call, when asked to identify
the individual who shot him, the complainant at first said that he did not know,
but later responded that “a boy named Whoopie” was the shooter.  The Texas City Police and an ambulance
arrived shortly thereafter.

In his conversation with the dispatcher and in his testimony
at trial, the complainant claimed the vehicle’s engine was visibly smoking.  Arriving on the scene later, Officer E.
Authorlee did not find the vehicle smoking. 
The officer testified that when she arrived, the complainant was in the
vehicle alone and he told her that Whoopie shot him.  According to the complainant, his brother
left the scene to get help.  The
complainant falsely informed Officer Authorlee that he had driven alone.  The complainant testified that he did not
have a conversation with his girlfriend after he left the gas station;
nonetheless, his girlfriend arrived at the scene of the broken-down vehicle.  He was hospitalized for over three weeks.

While the complainant recovered at the hospital, a detective
from the Texas City Police Department asked him to identity the shooter from a
group of six photographs, and the complainant identified appellant.

Shortly after the shooting, the police presented the gas
station clerk with a photographic line-up of six different men with appearances
similar to that of appellant, but the clerk was given no instructions regarding
the photographs.  He immediately identified
appellant as the fleeing gunman based on “facial features and same skin tone,” except
for appellant’s facial hair, but stated that he could not say “for sure” that
the man he identified committed the crime. 
The clerk testified that appellant resembled the fleeing gunman.  The clerk also testified that the shooter
wore orange.

Michael Wyles, the complainant’s father, testified that he
and appellant were acquaintances who had worked together in the past.  Wyles testified that some time after the
incident, appellant told him that if appellant had known the complainant was
Wyles’s son, he would not have shot him. 
Wyles did not remember when this alleged conversation occurred, and he did
not report it to the police.

Roy Dickson, an acquaintance of both appellant and the
complainant, testified that he had never heard appellant referred to as
“Whoopie.”  He also testified that he spoke
to the complainant at the gas station, but he did not see appellant there.  Dickson left the gas station immediately
after he heard one gun shot.

The jury returned a verdict of guilty on the charge of
aggravated assault with a deadly weapon. 
Appellant pled true to an enhancement paragraph during the punishment
phase, and the jury returned a finding of true on that enhancement.  The jury assessed his punishment at ten
years’ confinement for the first degree felony charge.  Appellant did not file a motion for a new
trial.  This appeal followed.

Analysis

In his sole issue on appeal, appellant
contends that the State failed to present factually sufficient evidence to support
his conviction.

A.      Standard of Review

When conducting a factual sufficiency
review, we view all of the evidence in a neutral light.  Cain v.
State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997).  We will set aside the verdict only if (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or
(2) the verdict is against the great weight and preponderance of the evidence.  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  Under the first prong of Johnson, we cannot conclude that a conviction is “clearly wrong” or
“manifestly unjust” simply because, on the quantum of the evidence admitted, we
would have voted to acquit had we been on the jury.  Watson
v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Under the second prong of Johnson, we cannot declare that a conflict in the evidence justifies
a new trial simply because we disagree with the jury’s resolution of that
conflict.  Id.  Before finding that the
evidence is factually insufficient to support a verdict under the second prong
of Johnson, we must be able to say,
with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury’s verdict.  Id.  In conducting a factual sufficiency review, we
must also discuss the evidence that, according to the appellant, most
undermines the jury’s verdict.  See Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

          Appellate
courts should afford appropriate deference to a jury’s decision when that
decision is based upon an evaluation of credibility.  Lancon
v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).  The jury is in the best position to judge the
credibility of a witness because it is present to hear the testimony, as
opposed to an appellate court that relies on the cold record.  Id.  The jury may choose to believe some portion of
a witness’s testimony and disbelieve other portions.  Id. at
707; see also Clewis v. State, 922
S.W.2d 126, 134 (Tex. Crim. App. 1996) (stating that in conducting factual
sufficiency review appellate courts “[do] not review the factfinder’s weighing
of the evidence”).

B.      Factual Sufficiency

The State charged appellant with
aggravated assault with a deadly weapon.  A person commits the offense of assault if he
“intentionally or knowingly, or recklessly causes bodily injury to another.”  Tex.
Penal Code Ann. § 22.01(a) (Vernon Supp. 2010).  A person commits the offense of aggravated
assault if he commits an assault and he “causes serious bodily injury to
another” or he “uses or exhibits a deadly weapon during the commission of the
assault.”  Id. § 22.02(a)
(Vernon Supp. 2010).  The State is not
required to prove that appellant caused serious bodily injury to convict for
aggravated assault when a deadly weapon was used or exhibited.  Williams
v. State, 226 S.W.3d 611, 616 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

Here, the complainant testified
that (1) as he turned around to pay the clerk at the convenience service
window, appellant threatened to shoot him, (2) he was shot in the back moments
later, and (3) after he was shot, he spun around and saw appellant fleeing
while firing two more shots.  This
portion of the complainant’s testimony is corroborated by the clerk’s statement
and testimony that appellant shares the same facial features as the fleeing
gunman and by Michael Wyles’s testimony that appellant admitted responsibility
for the shooting.

Appellant argues that the jury
erred in finding that the complainant’s recollection of the incident was
accurate.  He points out that the complainant’s
testimony lacked credibility because portions of his testimony were
inconsistent and conflicted with previous statements, and the complainant was
under the influence of alcohol and marijuana at the time of the incident.  Appellant further contends that the complainant’s
prior felony convictions affect the credibility of the complainant’s testimony.
 However, these arguments challenge the
factual sufficiency of the evidence and are all based on the credibility of
witnesses and the weight of their testimony, issues on which we must defer to
the jury.  See Lancon, 253 S.W.3d at 705.  The jury is in the best position to judge the
credibility of the complainant’s impeached testimony because it was present to
hear the testimony and could choose to believe some testimony and disbelieve
other testimony.  See id. at 705, 707.

Appellant further argues that the
evidence supporting the conviction is so weak that the jury’s verdict is
manifestly unjust because the clerk could not positively identify appellant, no
tests were performed on the recovered bullet jacket or the bullet that struck the
complainant’s body, no fingerprint comparisons were made, and the police did
not conduct a follow-up investigation. 
He also argues that no witness saw the actual shooting.  However, the complainant’s testimony provided
an eyewitness account of the shooting and identified appellant as the fleeing
gunman.  The complainant testified that
he observed appellant fire the second and third shots.  See,
e.g., Aguilar v. State, 468
S.W.2d 75, 77 (Tex. Crim. App. 1971) (holding testimony of eyewitness alone
sufficient to support conviction); Davis
v. State, 177 S.W.3d 355, 359 (Tex. App.—Houston [1st Dist.] 2005, no pet.)
(same).

We cannot say that this evidence is
so weak as to undermine confidence in the jury’s verdict.  Watson,
204 S.W.3d at 417.  Neutrally considering
all of the evidence, we conclude that the evidence is factually sufficient to support
the jury’s verdict that appellant committed the offense of aggravated assault
with a deadly weapon, and thus the verdict was not so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust; nor is
the verdict against the great weight and preponderance of the evidence.  See id.

Conclusion

We hold that the State presented factually sufficient evidence to support
the jury verdict and therefore affirm the judgment of the trial court.

 

 

 

                                                                   Evelyn
V. Keyes                                                                                                  Justice 

 

Panel
consists of Justices Keyes, Higley, and Bland.

Do
not publish.  Tex. R. App. P. 47.2(b).











[1]           See Tex. Penal Code Ann. § 22.02(a) (Vernon Supp. 2010).

 





[2]
          Appellant contends that the
medical records contain an admission by the complainant that he was under the
influence of alcohol and marijuana during the incident.